**O**
**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL CHAMNESS, DANIEL FREDERICK, and RICH WILSON,<br><br>    Plaintiffs,<br><br>v.<br><br>DEBRA BOWEN, DEAN LOGAN; and DOES 1 through 10, inclusive,<br><br>    Defendants.<br><br>ABEL MALDONADO, CALIFORNIA INDEPENDENT VOTER PROJECT, and CALIFORNIANS TO DEFEND THE OPEN PRIMARY,<br><br>    Intervener-Defendants | CASE NO. CV 11-01479 ODW (FFMx)<br><br>Order **DENYING** Plaintiffs' Motion for Summary Judgment [94] [Filed 05/06/11] and **GRANTING** Summary Judgment in Favor of Defendants and Intervener-Defendants |

# I. INTRODUCTION

Pending before the Court is Plaintiffs, Michael Chamness ("Chamness"), Daniel Frederick ("Frederick"), and Rich Wilson's ("Wilson") (collectively, "Plaintiffs"), May 6, 2011 Motion for Summary Judgment. (Dkt. No. 94.) Defendant, Debra Bowen ("Bowen"),[1] and Intervener-Defendants, California Independent Voter Project ("CAIVP"), Abel Maldonado ("Maldonado"), and Californians to Defend the Open Primary ("CADOP") (collectively, "Intervener-Defendants"), filed their respective Oppositions on May 23, 2011, (Dkt. Nos. 114, 115), to which Plaintiffs filed a Reply on May 30, 2011, (Dkt. No. 116). After careful consideration of the parties' presentations at oral argument along with the briefing and evidence submitted in support of and in opposition to the instant Motion, for the reasons discussed below, Plaintiffs' Motion is **DENIED** and the Court **GRANTS** summary judgment in favor of Defendants and Intervener-Defendants.

# II. BACKGROUND

This lawsuit challenges the constitutionality of certain provisions of California Senate Bill 6 ("SB6"), the legislation implementing California's Proposition 14. The Court had the occasion to recount the legislative history concerning both SB6 and Proposition 14 in its March 30, 2011 Order. For context, however, the Court reiterates the relevant background information here.

On February 19, 2009, SB6, which contained numerous revisions to the California Elections Code, was introduced and passed by the California Legislature. (SUF No. 21.) Subsequently, on June 8, 2010, Proposition 14 was passed by California voters. (SUF Nos. 21, 23.) Prior to the passage of Proposition 14, California's primary and general election scheme was as follows:

> California generally holds two statewide elections in even-numbered years to elect candidates to state and federal offices – a primary election (in June) and a general election (in November). These elections . . . are partisan,

---

[1] With respect to the instant Motion, Defendant Dean Logan filed a Statement of No Position, in which he expressed his intention to be bound by the ruling of the Court. (Dkt. No. 113.)

> which means that most candidates are associated with a political party. For these partisan offices, the results of a primary election determine each party's nominee for the office. The candidate receiving the most votes in a primary election is that party's nominee for the general election. In the general election, voters choose among all of the parties' nominees, as well as any independent candidates. (Independent candidates – those not associated with a party – do not participate in primary elections.) The winner of the general election then serves a term in that office.

(Dutta Decl., Exh. Q.) Proposition 14, which applies to elections held after January 1, 2011, however, amended the California Constitution to change the election process for most state and federal offices. (*See* DSUF No. 51; Dutta Decl., Exh. Q.) In essence, Proposition 14 effectively replaced traditional California party primary elections with a type of "open primary" known as a "top two" or "voter-nominated" primary election. In doing so, Proposition 14 made it possible for any candidate to run in a primary election, regardless of whether that candidate is affiliated with a California "qualified party."[2] Proposition 14's "top two" system was described in the June 8, 2010 Official Voter Information Guide as follows:

> This measure creates a single ballot for primary elections for [certain] congressional and state elective offices . . . . Candidates would indicate for the ballot either their political party (the party chosen on their voter registration) or no party preference. All candidates would be listed—including independent candidates, who now would appear on the primary ballot. Each voter would cast his or her vote using this single primary ballot. . . . The two candidates with the highest number of votes in the primary election—regardless of their party preference—would advance

---

[2] California recognizes both political parties that have qualified to participate in primary elections ("qualified parties") and political bodies seeking to qualify for political party status ("non-qualified parties"). *See* Cal. Elec. Code §§ 338, 5001. A party becomes qualified to participate in a primary election by meeting at least one of three statutory tests, which involve polling sufficient votes at the preceding gubernatorial election, having sufficient voters affiliate with the party, or petitioning for qualification. Cal. Elec. Code § 5100. A group becomes a political body (a "non-qualified" party) by electing temporary officers at a caucus or convention, selecting a party name, and filing a formal notice with the Secretary of State. Cal. Elec. Code § 5001. Presently there are six "qualified parties" in California: American Independent, Democratic, Green, Libertarian, Peace and Freedom, and Republican. (DSUF. No. 46.) Additionally, seventeen political bodies are currently attempting to qualify for political party status. (DSUF No. 47.)

> to compete in the general election. In fact, the two candidates in the general election could have the same party preference.

(SUF No. 22; Dutta Decl., Exh. Q.)

When a candidate runs under the Proposition 14 scheme, he may state his "political party preference, or lack of political party preference . . . in a manner provided by statute." Cal. Const. art. II, § 5(b). The relevant statute, California Elections Code § 8002.5(a), which was added by SB6, provides that "[a] candidate for a voter-nominated office may indicate his or her party preference, or lack of party preference, as disclosed upon the candidate's most recent statement of registration . . . ." The manner in which the candidate's preference appears on the ballot is set forth in California Elections Code section 13105(a), which was amended by SB6, and provides:

> In the case of candidates for a voter-nominated office in a primary election, a general election, or a special election to fill a vacancy in the office of United States Senator, Member of the United States House of Representatives, State Senator, or Member of the Assembly, immediately to the right of and on the same line as the name of the candidate, or immediately below the name if there is not sufficient space to the right of the name, there shall be identified in eight-point roman lowercase type the name of the political party designated by the candidate pursuant to Section 8002.5. The identification shall be in substantially the following form: "My party preference is the _____ Party." If the candidate designates no political party, the phrase "No Party Preference" shall be printed instead of the party preference identification. If the candidate chooses not to have his or her party preference listed on the ballot, the space that would be filled with a party preference designation shall be left blank.

Cal. Elec. Code § 13105(a). In her capacity as the Secretary of State, Bowen interprets the phrase "political party" in the first portion of this section to mean only a "qualified party." She has further concluded that candidates who prefer a "non-qualified" party may not state the term "Independent" on the ballot. Rather, as evidenced by the ballots from the February 15, 2011 Senate District 28 Election (the "SD 28 Election") and the May 17, 2011 Congressional District 36 Election (the "CD 36 Election"), candidates who prefer

4

"non-qualified parties" must state that they have "No Party Preference" or must leave the space blank. (SUF. Nos. 3, 42; Dutta Decl., Exhs. E, G.)

Additionally, when a candidate runs for a voter-nominated office under the Proposition 14 scheme, he may run as a write-in candidate only in a primary election. California Elections Code section 8605 provides:

> No person whose name has been written in upon a ballot for an office at the direct primary may have his or her name placed upon the ballot as a candidate for that office for the ensuing general election unless one of the following is applicable:
> . . .
> (c) At that direct primary he or she received . . . the highest number of votes cast for that office or the second highest number of votes cast for that office . . . .

Cal. Elec. Code § 8605. Because only the two candidates with the highest number of votes in the primary election advance to compete in the general election, "[a] person whose name has been written on the ballot as a write-in candidate at the general election for a voter-nominated office shall not be counted." Cal. Elec. Code § 8606. Bowen interprets these statutes to ban all write-in candidates from running in a general election for a voter-nominated office. (SUF No. 41; Dutta Decl., Exh. B at 5 n.3.)

### III. UNDISPUTED FACTS[3]

The gravamen of Chamness's claims is that, as a result of SB6 and Proposition 14, he is not permitted to state his affiliation with the "Coffee Party" nor that he is "Independent" on the ballot when he runs for political office in California. (SUF No. 3.) Rather, he is required to state that he has "No Party Preference." (SUF No. 3.) Because of this limitation, Chamness brings an as-applied challenge to SB6 and Proposition 14 with respect to two special primary elections for which he qualified to run and appeared

---

[3] The Court refers to the undisputed material facts set forth in Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law ("SUF"). (Dkt. No. 100.) In response, Bowen filed a Statement of Genuine Issues in Opposition to Plaintiffs' SUF ("DSUF"). (Dkt. No. 114-7.) Additionally, the Intervener-Defendants filed a Statement of Genuine Issues in Opposition to Plaintiffs' SUF. (Dkt. No. 115-13). Plaintiffs responded with another Statement of Uncontroverted Facts and Conclusions of Law. (Dkt. No. 117.)

on the ballot – (1) the SD 28 Election, in which he sought to run as a candidate affiliated with the "Coffee Party," and (2) the CD 36 Election, in which sought to place the term "Independent" next to his name on the ballot. (SUF No. 2.) Despite Chamness's objections, he appeared on both ballots as follows:

> MICHAEL CHAMNESS
> No Party Preference
> Non-Profit Organization Consultant

(SUF. No. 3, 42; Dutta Decl., Exhs. E, G.)[4] In the SD 28 Election, Chamness received 0.55% of the vote, and in the CD 36 Election, Chamness received 0.2% of the vote. (DSUF Nos. 48, 49; Waters Decl., Exhs. E, F.)

Frederick and Wilson bring two "intertwined" as-applied challenges to SB6 and Proposition 14, asserting that while SB6 provides for write-in candidacies, it also bans all write-in votes from being counted. Their challenges arise from Frederick's desire to run in the May 3, 2011 Assembly District 4 Special General Election (the "AD 4 Election"), and Wilson's attempt to cast a write-in vote for Frederick in the same election. (SUF. Nos. 5, 7.) Prior to the AD 4 Election, on February 27, 2010, Frederick and Wilson submitted a letter to Bowen, in which they inquired as to whether Frederick would be able to run as a write-in candidate in the AD 4 Election, and whether Wilson's vote would be counted, if he voted for Frederick in the AD 4 Election. (SUF No. 27; Dutta Decl., Exh. W.) On March 2, 2011, Bowen's Chief Counsel responded that SB6 would allow Frederick to run in the general election if he was "one of the top-two voters getters at the primary election." (SUF No. 28; Dutta Decl., Exh. X.) Bowen's Chief Counsel further stated that Bowen had "no intention of disregarding the California Constitution's requirement to uphold the provisions of [SB6] or any other provision of

---

[4] In support of their respective filings, the parties request that the Court take judicial notice of several documents, most of which are public records such as sample ballots, official voter guides, and official candidate lists. (*See* Pl.'s RJN at 2-3; Bowen's RJN at 2-3.) Because a court "may presume that public records are authentic and trustworthy[,]" *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999), the Court takes judicial notice of the abovementioned public records pursuant to Federal Rule of Evidence 201 only as far as it considers them in its reasoning as set forth below.

law." (SUF No. 28; Dutta Decl., Exh. X.)  In light of Bowen's response, Frederick chose not to file any papers to run as a write-in candidate for the AD 4 Election. (SUF No. 29.) Although Wilson was aware that write-in votes would not be counted, he cast a write-in vote for Frederick, which indeed was not counted.  (SUF Nos. 8, 30, 31; DSUF 45.)

Maintaining that they are entitled to summary judgment as a matter of law, Plaintiffs ask this Court to declare SB6 unconstitutional and unenforceable, and to declare Proposition 14 inoperative until a new law has been enacted to replace SB6. (Mot. at 7.) The Court discusses Plaintiffs' arguments below.

## IV.    LEGAL STANDARD

The Court sets forth both the traditional legal standard for summary judgment and the Court's authority to grant summary judgment *sue sponte* to a non-moving party in the absence of cross-motion for summary judgment.

### A.    SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(C)

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id*. at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the

nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Moreover, it is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

When ruling on a motion for summary judgment, the Court may consider evidence including the pleadings, discovery and disclosure materials, and any affidavits on file. Fed. R. Civ. P. 56(c)(2). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253-54.

**B. SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(F)**

"It is generally recognized that a court has the power *sua sponte* to grant summary judgment to a non-movant when there has been a motion but no cross-motion." *Kassbaum v. Steppenwolf Prods, Inc.*, 236 F.3d 487, 494 (9th Cir. 2000) (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982); *see also Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985)("a district court may issue summary judgment on its own motion . . . where one party moves for summary judgment and, after the hearing, it appears from all the evidence presented that there is

no genuine issue of material fact and the *non-moving* party is entitled to judgment as a matter of law."). "However, the propriety of granting summary judgment in favor of a party who did not so move is often a 'close question.'" *Kassbaum*, 236 F.3d at 494 (quoting *Sohappy v. Hodel*, 911 F.2d 1312, 1320 (9th Cir. 1990)).

"[I]f a court concludes that a non-moving party is entitled to judgment, 'great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law.'" *Id.* (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)). "Where the district court grants summary judgment in the absence of a formal motion, [it must] . . . ensure that the party against whom judgment was entered had a full and fair opportunity to develop and present facts and legal arguments in support of its position." *Portsmouth Square, Inc.*, 770 F.2d at 869 (citing *Cool Fuel*, 685 F.2d at 312). Essentially, "[a] litigant is entitled to reasonable notice that the sufficiency of his or her claim will be in issue[,]" which requires "adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Id.* (citing *Townsend v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir. 1982); *Portland Retail Druggists Assoc. v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981)).

## V. DISCUSSION

The Court now turns to the merits of Plaintiffs' Motion for Summary Judgment, first setting forth the substantive standards applied in election regulation cases, then addressing the merits of Chamness's claims, and finally discussing the merits of Frederick's and Wilson's claims.

**A. STANDARD FOR CONSTITUTIONAL CHALLENGES TO STATE ELECTION LAWS**

"[V]oting is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id.* (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)). "The Constitution grants to the States a broad power to

prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). Consequently, the Supreme Court recognizes that States "retain the power to regulate their own elections." *Burdick*, 504 U.S. at 433 (citing *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973); *Tashjian*, 479 U.S. at 217). "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

"Election laws will invariably impose some burden upon individual voters." *Id.* "[T]o subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Id.* "Accordingly, the mere fact that a State's system 'creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny.'" *Id.* (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)). Rather, "a more flexible standard applies." *Id.* at 434 (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983)). When considering a constitutional challenge to a state election law, courts must "weigh the character and magnitude" of the burden the State's rule imposes on the rights at issue against the interests the State contends justify that burden, "taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.*; *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002).

Under this standard, regulations imposing severe burdens on constitutional rights must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434. "Lesser burdens, however, trigger less exacting review[.]" *Rubin*, 308 F.3d at 1014. "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the [constitutional] rights of voters, 'the State's

10

important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788). "[N]o bright line separates permissible election-related regulation from unconstitutional infringements," and courts are required to make "hard judgments" given the interests involved. *Rubin*, 308 F.3d at 1014.

First, the Court must determine the nature of the burden on Plaintiffs' rights, for "[i]t is the severity of th[ose] burden[s] . . . that determines the standard of review by which we judge the state's interest and, accordingly, decide whether the restriction is unconstitutional." *Id.* at 1014. "Courts will uphold as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process." *Id.* "This is true even when the regulations 'have the effect of channeling expressive activities at the polls.'" *Id.* (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 369 (1997)). Indeed, "[c]ourts will strike down state election laws as severe speech restrictions only when they significantly impair access to the ballot, stifle core political speech, or dictate electoral outcomes." *Id.* at 1015. Moreover, a restriction is particularly unlikely to be considered severe when a candidate is given other means of disseminating the desired information. *Id.* at 1014.

### B. PLAINTIFF CHAMNESS'S CLAIMS

In its March 30, 2011 Order, the Court engaged in a detailed analysis of Chamness's claims arising under the First Amendment, Fourteenth Amendment, and Elections Clause. Although the Court concluded that Chamness was not likely to succeed on the merits of his claims, (Dkt. No. 80 at 16-17), because the Court's analysis was framed by the standards governing preliminary injunctions, the Court reevaluates Chamness's claims in the context of the standards governing summary judgment.

While there is little doubt that Chamness's speech is burdened because he is not able to state that he is "Independent" on the ballot, Supreme Court, Ninth Circuit, and California case law leads this Court to conclude that this burden is not severe. *See Rubin*, 308 F.3d at 1015 (stating that a prohibition on ballot labels such as "activist" does not

severely burden a candidate's First Amendment rights); *Timmons*, 520 U.S. at 364 (finding that a statute prohibiting candidates from appearing on a ballot as a candidate of more than one party does not impose a severe burden on First Amendment rights); *Lightfoot v. Eu*, 964 F.2d 865, 871 (9th Cir. 1992) (holding that requiring write-in candidates to meet certain thresholds before identifying party affiliation on the ballot was a "slight" burden); *Libertarian Party v. Eu*, 28 Cal. 3d 535, 545 (1980) (finding that preventing a candidate from an "unqualified" party from designating his party affiliation on a ballot is a "clearly insubstantial" burden).[5] Furthermore, Chamness has alternate means other than the ballot itself to advertise or otherwise explain his party affiliation to voters.[6] *See* Cal. Elec. Code § 13307.5 (allowing candidates to "purchase the space to place a statement in the voter information portion of the sample ballot that does not exceed 250 words"); Cal. Gov't Code § 85601. Finally, Defendants apply the ballot designation restrictions to all "non-qualified parties," in a "generally applicable, even-handed, [and] politically neutral" way. *See Rubin*, 308 F.3d at 1014.

Because Plaintiff's rights are not severely burdened, important regulatory interests will suffice to justify the State's restriction. *See Rubin*, 308 F.3d at 1014. The interests

---

[5] The cases to which Plaintiffs cite are all non-binding authority. Additionally, these cases are either contrary to Plaintiffs' position or are factually distinguishable. *See Schrader v. Blackwell*, 241 F.3d 783 (6th Cir. 2001) (holding that an Ohio statute prohibiting party labels to candidates of unqualified parties did not place a sever burden on candidates' First Amendment rights because reasonable means existed for a party to become recognized); *Bachrach v. Secretary of the Commonwealth*, 415 N.E. 2d 832 (Mass. 1981) (holding that prohibiting candidates from using the term "Independent" on the ballot was a severe burden because the Massachusetts Legislature permitted any other word to be used as a designation and singled out only the word "Independent" resulting in what the court determined was "invidious discrimination"); *Rosen v. Brown*, 970 F.2d 169 (6th Cir. 1992) (holding that, in light of evidence presented by three experts that a specific candidate who previously used the term "Independent" to publically represent his political platform would be placed at a disadvantage if he could not place "Independent" next to his name on the ballot, the Ohio statute at issue placed a severe burden on that candidate's rights).

[6] While Plaintiffs tangentially raise the issue that the cost to Chamness to provide a candidate statement in the official voter guide may increase the severity of the burden on his rights, (*see* SUF No. 13), the Court notes that there are a variety of other means by which Chamness may express his political viewpoints, including, *inter alia*, distributing campaign mailings, holding in-person meetings with voters, and contacting voters directly. Additionally, the Intervener-Defendants assert, and Plaintiffs do not refute that, at least with respect to the SD 28 Election, if he met certain eligibility requirements, Chamness could have published a campaign statement free of charge. (*See* SUF No. 13.) Thus, in light of the above, the Court concludes that any potential expense associated with publishing a candidate statement in the official voter guide does not itself increase the severity of the burden on Chamness's rights.

presented by Defendants are important, if not compelling, to justify the State's restriction. First, California's interest in maintaining the distinction between "qualified" political parties and "non-qualified" political organizations is, at least, important. *See, e.g., Jenness v. Fortson*, 403 U.S. 431, 442 (1971) ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot-the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election."); *Libertarian Party*, 28 Cal. 3d at 546 ("The maintenance of the integrity of the distinction between qualified and nonqualified parties serves a compelling state interest"). Second, California's interest in avoiding confusing or misleading party preference ballot designations – *i.e.*, potentially between candidates labeled as "Independent" and those associated with the "qualified" American Independent party – is sufficiently important. *See Norman v. Reed*, 502 U.S. 279, 290 (1992) (to prevent "misrepresentation and electoral confusion," a state may prevent candidates from using party label if they are not affiliated with that party).

      Furthermore, while Plaintiffs claim the SB6 dictates electoral outcomes because it favors "qualified parties" while disfavoring "non-qualified parties," Plaintiffs have not presented any evidence to support this conclusion. On the contrary, the evidence shows that the restriction on Chamness's ability to state "Independent" on the ballot was instituted for a legitimate State reason – namely, the State's important regulatory and procedural interest in maintaining the distinction between "qualified" and "non-qualified" parties. *Cf. Cook v. Gralike*, 531 U.S. 510, 514 (2001) (holding that the Missouri Constitution's imposition of a binding instruction on a candidate to support congressional term limits and subsequent punitive placement of "adverse labels" next to the candidates name on the ballot for failure to comply with that instruction was "plainly designed to favor candidates who [were] willing to support the . . . amendment and to disfavor those who either oppose[d] [it] entirely or would [have] preferr[ed] a different proposal").

      In light of the foregoing, the Court finds that the burden on Chamness's constitutional rights is not severe, and California's interests are sufficiently important to

justify its restrictions. Additionally, the Court finds that SB6 is not designed to "dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *See Cook*, 531 U.S. at 523. Accordingly, the Court **DENIES** Plaintiffs' Motion for Summary Judgment Chamness's First Amendment, Fourteenth Amendment, and Elections Clause claims.[7]

### C. PLAINTIFF FREDERICK'S AND PLAINTIFF WILSON'S CLAIMS

Frederick claims that he was prevented from qualifying as a write-in candidate in the AD 4 Election in violation of his rights under the First Amendment and the Due Process Clause. (Mot. at 17.) Wilson asserts that his write-in vote cast for Frederick was banned from being counted in violation of his rights under the First Amendment, Fourteenth Amendment, Elections Clause, and Due Process Clause. (*Id.*)

Similar to Chamness's claims, there is little doubt that California's restrictions with respect to write-in voting have an impact on both Wilson's and Frederick's rights. Binding case law, however, leads this Court to conclude that the burdens placed on those rights are minimal.[8] In *Burdick v. Takushi*, the Supreme Court found that, given the "easy

---

[7] To the extent Plaintiffs argue that an email sent from a member of Bowen's staff to Defendant Maldonado's staff constitutes a "binding admission" that "SB6's Party Preference Ban violates the First and Fourteenth Amendments[,]" (Mot. at 23), the Court finds that the email and the attachment thereto, do not contain any language that constitutes such an admission. Rather, as discussed at length in the Court's March 30, 2011 Order, the email merely suggests "technical changes/clarifications" to SB6. (Dkt. No. 80.) Plaintiffs' argument in this respect is unavailing.

[8] The primary case on which Plaintiffs rely is factually distinguishable. *Turner v. District of Columbia Bd. of Elecs. & Ethics*, 77 F. Supp. 2d 25, 27 (D.D.C. 1999), involved a ballot initiative in the District of Columbia that attempted to reduce penalties for some use and possession of marijuana. After the ballots were printed, but before a vote was held, Congress passed the Barr Amendment, which prohibited funding in the District of Columbia for ballot initiates seeking to reduce penalties associated with possession, use, or distribution of controlled substances. *Id.* Consequently, after the vote was held, the defendants in *Turner* sought to refrain from counting the votes in order to avoid violating the Barr Amendment. *Id.* Because it found that the Barr Amendment did not preclude the counting, announcing, and certifying of the vote, however, the district court did not reach the constitutional issue of whether the Barr Amendment violated the plaintiffs' First Amendment rights. *Id.* at 35. The District court did, however, comment that if the Barr Amendment had promulgated such restrictions, they could be classified in three ways: (1) as "denying D.C. citizens access to the outcome of the election," (2) as content-based because of the substantive message concerning controlled substances, or (3) as a severe restriction under *Burdick* because "core political speech" through the vote would have been effectively extinguished. *Id.* at 32-33. None of these issues is present in the instant case. As to the first issue, Defendants have not denied California citizens access to the outcome of an election. As to the second and third issues, while Plaintiff claims that Defendants' actions amount to "content-based restriction[s]" on "core political speech," in *Burdick*, the Supreme Court unequivocally stated that "there is nothing content based about a flat ban on all forms of write-in ballots." *Burdick*, 504 U.S. at 438. Consequently, *Turner* is inapposite. Rather, *Burdick*, which Plaintiffs neglect to even mention in their Motion, controls the instant case.

access to the ballot" provided by Hawaii's voting system, the burden on candidates as a result of the *complete ban* on write-in voting was "a very limited one." 504 U.S. at 436-37. Here, California's limitations with respect to write-in voting are far less restrictive than those in *Burdick*. Whereas Hawaii's regulations in *Burdick* banned write-in voting in all elections, here, California restricts write-in voting in only general elections, yet allows write-in voting in primary elections. Cal. Elec. Code § 8606. Additionally, similar to Hawaii in *Burdick*, California provides ease of access to the ballot. Indeed, any candidate, regardless of whether he or she is affiliated with a qualified political party, may run in the primary for "voter-nominated offices." Cal. Const. art. II, § 5(a). Accordingly, *Burdick* compels this Court to conclude that the burden on Wilson's and Frederick's rights is not severe.

Because neither Wilson's nor Frederick's rights are severely burdened, important regulatory interests will suffice to justify the State's restriction. *See Burdick*, 504 U.S. at 439. Here, one of the stated objective of Proposition 14 is to "implement an open primary system in California." (Dutta Decl., Exh. Q at 95.) Under this system, the two candidates who receive the most votes in the primary election proceed to the general election. *See* Cal. Elec. Code § 8605(c). If candidates could simply bypass the primary election by having their names inserted as write-in candidates in the general election, this would defeat one of the primary purposes of Proposition 14, a measure that was passed by California voters. Thus, the State's has an important, if not compelling, interest in promoting "the goal of identifying the two candidates who will compete in the general election." (Bowen Opp'n at 20.) In essence, the State has an important interest in protecting the will of its voters. This is sufficient to overcome the slight burden on Frederick's and Wilson's rights.

Additionally, while Plaintiffs claim the SB6 dictates electoral outcomes because it favors "qualified parties" while disfavoring "non-qualified parties," Plaintiffs have not presented any evidence to support this conclusion. On the contrary, the evidence shows that the restrictions on write-in voting are applied to both "qualified parties" and "non-qualified parties" in a "generally applicable, even-handed, [and] politically neutral" way.

*See Rubin*, 308 F.3d at 1014. Moreover, the restrictions were instituted for a legitimate State reason – preserving the will of the California voters.

To the extent Plaintiffs argue that their constitutional rights have been violated because SB6 "deceives both candidates and voters" by giving the "illusion" that write-in voting in a general election is permissible, (Mot. at 16-18), the Court finds this argument unavailing.[9] SB6 gives no such illusion. Rather, SB6 is very clear that write-in votes will not be counted. Cal. Elec. Code § 8606 ("A person whose name has been written on the ballot as a write-in candidate at the general election for a voter-nominated office shall not be counted."). Furthermore, on March 2, 2011, Bowen's Chief Counsel clarified that SB6 would allow Frederick to run in the general election only if he was "one of the top-two voters getters at the primary election." (SUF No. 28; Dutta Decl., Exh. X.) Hence, both Frederick and Wilson were aware that write-in votes in the general election would not be counted. (DSUF No. 45.) Neither California law nor California's elections officials have been unclear about California's write-in restrictions.

In light of the foregoing, this Court holds that California's restrictions with respect to write-in voting in general elections do not "unconstitutionally limit access to the ballot . . . or unreasonably interfere with the right of voters to associate and have candidates of their choice placed on the ballot." *See Burdick*, 504 U.S. at 434. Because the burden on their constitutional rights is not severe, and California's interests are sufficiently important, Frederick's and Wilson's claims under the First Amendment, Fourteenth Amendment, and Due Process clause fail as a matter of law. Additionally, the Court finds that SB6 is not designed to "dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints[,]" *see Cook*, 531 U.S. at 523, and consequently, Frederick's and Wilson's claims under the Elections Clause fail as a matter of law. Accordingly, the Court **DENIES** Plaintiffs' Motion for Summary Judgment as to these claims.

---

[9] Plaintiffs argue that an email sent from a member of Bowen's staff to Defendant Maldonado's staff constitutes a "binding admission" that "SB6's Vote Counting Ban deceives both candidates and voters." (Mot. at 17.) The Court, however, finds that the email does not constitute such an admission. Rather, the email merely suggests changes and/or clarifications to SB6 for the sake of consistency. Because the statute itself is unambiguous, Plaintiffs' argument in this respect is unavailing.

## VI. CONCLUSION

Finding that the restrictions of Proposition 14 and SB6 do not place "severe" burdens on Plaintiffs' rights and that the State has sufficiently important interests to justify the restrictions, the Court concludes that Plaintiffs' claims under the First Amendment, Fourteenth Amendment, and Due Process Clause fail as a matter of law. Additionally, finding that SB6 is not designed to "dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints[,]" but rather to serve important State interests, *see Cook*, 531 U.S. at 523, the Court concludes that Plaintiffs' Elections Clause claims fail as a matter of law. Accordingly, the Court hereby **DENIES** Plaintiffs' Motion for Summary Judgment.

Additionally, viewing the evidence in the light most favorable to Plaintiffs, the Court determines that there is no genuine issue of material fact and that Defendants and Intervener-Defendants are entitled to judgment as a matter of law. Because Plaintiffs have had a full and fair opportunity to develop facts in support of their position and to present evidence and legal argument,[10] the Court hereby **GRANTS** summary judgment in favor of Defendants and Intervener-Defendants. Judgment shall be entered in accordance with this Order and the Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

August 23, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

---

[10] In addition to the briefing submitted in support of their Motion for Summary Judgment, because the Court gave Plaintiffs notice that it was considering granting summary judgment in favor of Defendants and Intervener-Defendants, (*see* Dkt. No. 123), Plaintiffs had an opportunity to present any additional evidence or argument at the August 22, 2011 hearing on this matter. Moreover, with respect to Chamness's claims, in the context of the Motion for Preliminary Injunction, Plaintiffs fully briefed the Court and presented oral argument on March 21, 2011. Chamness's claims have not changed in any material way since the March 21, 2011 hearing. In totality, these events constitute a "full and fair opportunity full and fair opportunity to develop and present facts and legal arguments in support of [Plaintiffs'] position." *See Portsmouth Square, Inc.*, 770 F.2d at 869.